UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICKIE CROSS,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF FOOD AND AGRICULTURE, YOUNGSOO SON, and DOES 1–100,<br><br>Defendants. | No. 1:18-cv-01302-DAD-JLT<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING AS MOOT DEFENDANTS' MOTION TO STRIKE<br><br>(Doc. No. 5) |

This matter is before the court on a motion to dismiss filed by defendants California Department of Food and Agriculture ("CDFA") and Youngsoo Son ("Son") (collectively, the "defendants"). (Doc. No. 5-1.) Defendants also move to strike plaintiff's request for punitive damages. (*Id.*) A hearing on the motion was held on November 6, 2018. Attorney Randall Rumph appeared telephonically on behalf of plaintiff, and attorney Victoria Jalili appeared telephonically on behalf of defendants. The court has considered the parties' briefs and oral arguments, and for the reasons set forth below, will grant defendants' motion to dismiss with leave to amend and deny defendants' motion to strike as having been rendered moot.

**BACKGROUND**

Plaintiff was employed by defendant CDFA as an agricultural technician and defendant Son served as her supervisor. (Doc. No. 1-1 at 3.) Plaintiff's job duties included assisting in

1

deploying and inspecting insect traps in commercial agricultural areas and documenting data related to the insect traps. (*Id.*) Defendant Son terminated plaintiff's employment on March 13, 2017. (*Id.* at 5.)

In her complaint, plaintiff alleges as follows. Plaintiff claims she was terminated for conduct that is protected under the First Amendment of the United States Constitution and the California Whistleblower Protection Act ("CWPA"), California Government Code § 8547 *et seq*.[1] (Doc. No. 1-1 at 5–7.) Plaintiff engaged in protected conduct on two occasions: (1) on March 2, 2017, while plaintiff was driving to the CDFA worksite, a co-worker followed plaintiff too closely and drove in a manner that, according to plaintiff, endangered her, the co-worker, and the public in violation of California law, and plaintiff thereafter objected to defendant Son and the co-worker about the co-worker's driving; and (2) in or around May 2016, plaintiff noticed CDFA employees were at a McDonald's restaurant during work hours, saw "vehicles utilized by those employees" parked in the restaurant's parking lot, and took photographs of the vehicles "intend[ing] to show that the employees were sitting at a restaurant while they were on the clock." (*Id.* at 4–5.) Plaintiff alleges that both her objection to her co-worker's driving and her taking of the photos of CDFA employees' vehicles at the McDonald's parking lot were "determining factors" in defendant Son's decision to terminate her. (*Id.* at 7.) Plaintiff also alleges that her "confrontation with [her co-worker] over . . . illegal driving habits, among other things," contributed to her termination, as evidenced by her notice of termination.[2] (*Id.* at 5.)

On September 28, 2018, defendants filed the pending motion to dismiss. (Doc. No. 5.) On October 23, 2018, plaintiff filed her opposition, and, on October 30, 2018, defendants filed their reply thereto. (Doc. Nos. 6, 7.)

---

[1] Plaintiff asserts her First Amendment claim against defendant Son only and her CWPA claim against both defendants CDFA and Son.

[2] The complaint states that plaintiff's notice of termination is attached thereto as Exhibit 1 (Doc. No. 1-1 at 5), but the notice is not in fact attached to the complaint. At the November 6, 2018 hearing, plaintiff's counsel stated that he inadvertently failed to attach the notice to plaintiff's complaint filed in state court. Should plaintiff elect to file an amended complaint in this action, may attach the notice of termination to her amended complaint.

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). A dismissal may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In evaluating whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court will not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 676. A complaint must do more than allege mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

**ANALYSIS**

Defendants contend that: (1) plaintiff cannot state a claim for relief for violation of her First Amendment rights under 42 U.S.C. § 1983 because neither her objection to the driving of her co-worker nor her taking photos of vehicles parked at the McDonald's constitutes protected

/////
/////
/////
/////

speech; and (2) plaintiff cannot state a claim for relief under the CWPA because neither aspect of her alleged conduct constitutes a protected disclosure.[3] (Doc. No. 5-1 at 9, 17.)

**A.     The Complaint Does Not Plausibly Allege a First Amendment Retaliation Claim.**

The Civil Rights Act, pursuant to which plaintiff alleges her constitutional claim, provides in relevant part:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Plaintiff alleges that defendant Son was acting under color of state law when he terminated her employment and that her firing was in violation of the First Amendment, specifically violating her right to engage in protected speech. (Doc. No. 1-1 at 6–7.) As the Ninth Circuit has explained:

> In evaluating a First Amendment retaliation claim, [courts] address a sequential five-step series of questions. First, the plaintiff bears the burden of showing: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; [and] (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action. Next, if the plaintiff has satisfied the first three steps, the burden shifts to the government to show: (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009) (citations and internal quotation marks omitted); *see also Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013). Here, defendant Son contends that the court's inquiry ends at step one because plaintiff does not plausibly allege that she spoke on a matter of public concern. (Doc. No. 5-1 at 11–17); *see also*

---

[3] In her opposition to the pending motion to dismiss, plaintiff states that "[t]here were several facts inadvertently omitted in the complaint" and then lists those omitted facts. (Doc. No. 6 at 2.) However, "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Accordingly, the court will not consider the omitted facts listed in plaintiff's opposition brief, although she is free to include them in any amended complaint she elects to file.

4

*Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (The court must "determin[e] whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action"). "The [] emphasis . . . on the right of a public employee as a citizen in commenting upon matters of public concern [i]s not accidental" because "government offices could not function if every employment decision became a constitutional matter." *Connick v. Myers*, 461 U.S. 138, 143 (1983). Thus, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at 147.

To assess whether the speech at issue addressed a matter of public concern, this court must examine the content, form, and context of plaintiff's objection to her co-worker's driving habits and her taking photos of vehicles at the McDonald's. *See Connick*, 461 U.S. at 148. This inquiry is purely a question of law. *Robinson*, 566 F.3d 822. The content of the speech at issue is the "greatest single factor" in the inquiry. *Demers v. Austin*, 746 F.3d 402, 415 (9th Cir. 2014); *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Cir. 2009). Courts are to "look to what the employee[] actually said, not what [she] said after the fact" or "post hoc characterizations." *Desrochers*, 572 F.3d at 711. Speech which "enable[s] [] members of society to make informed decisions about the operation of their government" relates to a matter of public concern. *Id.* at 710 (citation and internal quotation marks omitted). On the other hand, "speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern." *Id.* (citation and internal quotation marks omitted). "[S]peech contain[ing] passing references to public safety[,] incidental to the message conveyed, weighs against a finding of public concern." *Id.* at 711 (citation and internal quotation marks omitted).

Courts must also consider the form of the speech at issue. That an employee expressed her views inside the office or privately, rather than publicly, "is not dispositive," but "[a] limited audience weighs against [a] claim of protected speech." *Desrochers*, 572 F.3d at 714 (citation

and internal quotation marks omitted); *see also Demers*, 746 F.3d at 416 (holding that, while not dispositive, "[i]f an employee expresses a grievance to a limited audience, such circulation can suggest a lack of public concern") "The relevance of non-disclosure to the public tracks the Supreme Court's acknowledgment that the public's interest in receiving well-informed views of government employees engaging in civic discussion is one of the primary purposes of its First Amendment retaliation jurisprudence." *Desrochers*, 572 F.3d at 714 (citation and internal quotation marks omitted). Thus, "[p]rivate speech motivated by an office grievance is less likely to convey the information that is a prerequisite for an informed electorate." *Id.* (citation and internal quotation marks omitted).

Lastly, courts "examine the context of the speech, particularly the *point* of the speech." *Id.* at 715 (citation and internal quotation marks omitted). "An employee's motivation [is] relevant to the public-concern inquiry." *Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting *Desrochers*, 572 F.3d at 715). Thus, courts ask: "[W]hy did the employee speak (as best we can tell)? Does the speech seek to bring to light actual or potential wrongdoing or breach of public trust, or is it animated instead by dissatisfaction with one's employment situation?" *Id.* (citation and internal quotation marks omitted). "The question of whether the speech was made to further some purely private interest is relevant to that inquiry." *Desrochers*, 572 F.3d at 715 (citation and internal quotation marks omitted).

With this guidance in hand, the court addresses whether plaintiff has plausibly alleged that she engaged in conduct that addressed a matter of public concern.

    1.    <u>Plaintiff's Complaint Does Not Plausibly Allege that Her Objection About the Driving of a Co-worker Addressed a Matter of Public Concern.</u>

Because the content, form, and context of plaintiff's alleged objection to the driving of her co-worker all indicate that her grievance did not address a matter of public concern, the court concludes that plaintiff does not plausibly allege a cognizable claim based upon her airing of that grievance.

/////

/////

6

a. *The Content of Plaintiff's Objection to Her Co-worker's Driving Suggests It Did Not Address a Matter of Public Concern.*

The exact content of plaintiff's objection to her co-worker's driving is not alleged in the complaint before the court. This omission from the allegations of the complaint is of import because the court must evaluate what plaintiff actually said, not her post hoc characterization of her expressed objection. *Desrochers*, 572 F.3d at 711. Instead, in her complaint plaintiff merely alleges merely that she "verbally complained to [her co-worker (Ms. Hurtado)] and to [defendant] Son about the Hurtado Illegal Driving." (Doc. No. 1-1 at 4.) Plaintiff's vague reference to the "Hurtado Illegal Driving" does not assist the court in ascertaining what plaintiff said to defendant Son. *Cf. Lopez v. Bans*, No. 1:16-cv-00340-DAD-JLT, 2016 WL 6821860, at *7 (E.D. Cal. Nov. 18, 2016) (finding the content requirement was satisfied where the plaintiff alleged that she spoke to other employees about district supervisors asking her to create false and fraudulent school attendance certifications in order to obtain additional federal funding); *Langley v. Cty. of Inyo*, No. 1:16-cv-01133-DAD-JLT, 2017 WL 1093883, at *2, 4 (E.D. Cal. Mar. 23, 2017) (finding the content requirement was satisfied where the plaintiff alleged that she spoke to human resources about potential violation of the Fair Labor Standards Act). The label "Hurtado Illegal Driving," which plaintiff has placed on her stated objection, is exactly the type of *post hoc* characterization the Ninth Circuit has instructed courts not to consider when evaluating the content of a statement allegedly giving rise to such a claim. *Desrochers*, 572 F.3d at 711.

However, even if the content of plaintiff's stated grievance about her co-worker's driving mirrored the allegations of her complaint—that the co-worker followed plaintiff too closely, drove in violation of California law, and endangered herself, plaintiff, and the public (Doc. No. 1-1 at 4)—this stated grievance does not pass muster under First Amendment retaliation law. As alleged, "the subject matter of [plaintiff's] statement is only marginally related to issues of public concern," *Johnson v. Multnomah County*, 48 F.3d 420, 425 (9th Cir. 1995), and plaintiff's statement would not be relevant in any way to the public's evaluation of the CDFA's performance, *Desrochers*, 572 F.3d at 711. Plaintiff's attempt to overcome this shortcoming by arguing that continued problematic driving by her co-worker could result in some future harm or

7

damage to CDFA employees, CDFA vehicles, or the public (Doc. No. 1-1 at 4) is unavailing, since such argument relies on nothing more than a "passing reference to public safety[,] incidental to the message conveyed." *Desrochers*, 572 F.3d at 711.

In her opposition, plaintiff cites to several cases to support her argument that "reporting illegal or criminal activity involves a matter of public concern." (Doc. No. 6 at 9–10.) First, however, in her complaint plaintiff fails to allege that in objecting to defendant Son about this matter she ever characterized her co-worker's driving as illegal or criminal. Second, even if she had so alleged, the decisions cited in her opposition brief on this point are inapposite. In fact, it appears plaintiff's counsel relied upon a string cite from a Ninth Circuit decision which was later reversed by the Supreme Court. *Compare* (Doc. No. 6 at 10), *with Ceballos v. Garcetti*, 361 F.3d 1168, 1176–77 (9th Cir. 2004), *rev'd,* 547 U.S. 410 (2006).[4] Third, none of the cases relied upon by plaintiff stand for the proposition that the reporting of illegal or criminal activity *necessarily* involves a matter of public concern. Indeed, adoption of such a proposition would lead to absurd results. One could not persuasively argue, for instance, that a California Department of Motor Vehicles employee who sees her co-worker stealing a candy bar and subsequently informs her supervisor of the infraction has, in doing so, spoken on a matter of public concern. In other words, "speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern." *Desrochers*, 572 F.3d at 711 (citation and internal quotation marks omitted); *see also Thomas v. City of Beaverton*, 379 F.3d 802, 808–10 (9th Cir. 2004) (finding that an employee's actions in response to racially disparate treatment regarding another employee not receiving a promotion might constitute a matter of public concern).

The court therefore concludes that plaintiff has failed to plausibly allege that the content of her objection to her co-worker's driving addressed a matter of public concern.

---

[4] The Ninth Circuit cited these cases for the proposition that "[o]ther circuits have also rejected any per se rule that a public employee does not receive any First Amendment protection for speech that occurs within the scope of his employment duties." *Garcetti*, 361 F.3d at 1176. The Supreme Court later explicitly rejected that proposition. *See Garcetti*, 547 U.S. at 424. In any event, plaintiff has not alleged that she was speaking on matters within the scope of her employment duties.

8

b. *The Form of Plaintiff's Objection to Her Co-worker's Driving Also Suggests It Did Not Address a Matter of Public Concern.*

Plaintiff alleges that she verbally objected to defendant Son and her co-worker about her co-worker's driving habits on the same day that her co-worker allegedly drove too closely behind her. (*See* Doc. No. 1-1 at 2.) As noted, plaintiff does not allege any other facts that would assist the court in ascertaining the form of her statement to defendant Son and the co-worker. "The fact that the speech took the form of an internal employee grievance means that the public was never made aware of [plaintiff's] concerns . . . [and] this [factor therefore] cuts against a finding of public concern." *Desrochers*, 572 F.3d at 715; *see also Demers*, 746 F.3d at 416.

In her opposition to the pending motion to dismiss, plaintiff argues that the internal nature of her grievance "is not dispositive." (Doc. No. 6 at 12.) As acknowledged above, plaintiff is correct in this regard. Nonetheless, the cases upon which plaintiff relies are distinguishable from this one in that, in those cases, the content of the speech clearly related to matters of public concern thus outweighing the fact that the speech was internal or private. *See, e.g.*, *Garcetti*, 547 U.S. at 420 ("Employees in *some cases* may receive First Amendment protection for expressions made at work."); *see also Desrochers*, 572 F.3d at 710 ("[W]e consider the content of the speech the greatest single factor in the [public concern] inquiry.") (citations and internal quotation marks omitted). Here, the court has already found that the content of plaintiff's objection to her co-worker's alleged driving habits weighs against a finding that plaintiff's speech related to a matter of public concern.

c. *The Context of Plaintiff's Objection to Her Co-worker's Driving Suggests It Did Not Address a Matter of Public Concern.*

Plaintiff does not allege that the context of her objection to her co-worker's driving weighs in favor of a finding that it involved a matter of public concern. (*See generally* Doc. No. 1-1.) Thus, as an initial matter, plaintiff has not met her burden of establishing that her objection to her co-worker's driving addressed a matter of public concern. Moreover, based on the facts alleged in the complaint and the opposition to the pending motion, it appears that the point of plaintiff's speech was not to bring to light actual or potential wrongdoing or breach of the

9

public's trust, but instead to have her co-worker correct her driving habits—a "purely private interest." *Desrochers*, 572 F.3d at 715. Indeed, plaintiff's opposition supports this conclusion by noting that plaintiff had previously stated her objection to the co-worker's driving. (Doc. No. 6 at 2.)

Consideration of all three of the relevant factors compels the conclusion that no statement regarding a matter of public concern has been alleged and the complaint therefore does not plausibly allege a First Amendment retaliation claim based on plaintiff's objection to her co-worker's driving.

2. <u>The Complaint Also Does Not Plausibly Allege that Plaintiff's Taking of Photos at McDonald's Addresses a Matter of Public Concern.</u>

The content and context of plaintiff's taking of photos of vehicles at McDonald's does implicate a matter of public concern. Nonetheless, because the form of plaintiff's taking of those photos does not, the court finds that plaintiff's complaint does not plausibly allege a First Amendment retaliation claim based thereon.

      a. *The Content of the McDonald's Photos Suggests They Address a Matter of Public Concern.*

Plaintiff alleges that, after "she noticed that employees of [CDFA] had been sitting at a McDonald's while on work hours," she "took photographs of vehicles utilized by those employees while the vehicles were parked at the McDonald's restaurant. (Doc. No. 1-1 at 4–5.) Defendant Son contends that these allegations do not plausibly allege that the content of the McDonald's photos addresses a matter of public concern because the they depicted employees' vehicles in a parking lot and not the actual employees who were allegedly not working during work hours. (Doc. No. 5-1 at 13.) Plaintiff counters that the photographs were "intended to show that the employees were sitting at a restaurant while they were on the clock." (Doc. Nos. 1-1 at 5; 6 at 5.)

Plaintiff's stated intention for taking the vehicle photos does not assist the court in assessing whether the content of the photos addresses a matter of public concern. Nonetheless, the court concludes that the other allegations of the complaint plausibly allege that the content of

10

the photos addresses a matter of public concern.  Plaintiff does not allege that she assumed employees were in the restaurant *because* she noticed their vehicles parked in the parking lot. Instead, she alleges that she *noticed* employees sitting at the restaurant while on work hours and then she took photographs of their parked vehicles to document that they were there during workhours.  Thus, the content of the photos at issue purports to show the misuse or waste of public funds, and such photos could "enable [] members of society to make informed decisions about the operation of [CDFA]."  *Desrochers*, 572 F.3d at 711.

Accordingly, the court finds that the complaint plausibly alleges that the content of the McDonald's photos relates to an issue of public concern.

        b.     *The Context of the McDonald's Photos Suggests They Address a Matter of Public Concern.*

Plaintiff alleges that she took the McDonald's photos with the "intent[ion] [of] show[ing] that the employees were sitting at a restaurant while they were on the clock." (Doc. No. 1-1 at 5.) Defendant Son contends that "there can be no context of public concern . . . where the photographs were not alleged to have been provided to anyone." (Doc. No. 5-1 at 17.)  This argument is misplaced because it goes to whether the *form* of the photos implicates a matter of public concern, not to whether the *context* of the photos does.  *See Desrochers*, 572 F.3d at 714–15. Here, as alleged, the context of the photos plausibly relates to a matter of public concern because plaintiff claims to have taken them to shed light on actual or potential wrongdoing, and not out of a personal interest.  In other words, the "*point* of the [photos]," *id.* at 715, was to shed light on potential governmental wrongdoing.  The court therefore concludes that plaintiff has plausibly alleged that the context of the McDonald's photos implicates a matter of public concern.

        c.     *The Form of the Photos Taken by Plaintiff Suggests They Did Not Relate to a Matter of Public Concern.*

Plaintiff does not allege that she disclosed the photos to anyone, whether privately or publicly. (*See* Doc. No. 1-1.)  "If an employee expresses a grievance to a limited audience, such circulation can suggest a lack of public concern." *Demers*, 746 F.3d at 416.  Here, the fact that plaintiff has not alleged that she showed the pictures to even a limited audience strongly suggests

11

a lack of public concern. In her opposition to the pending motion, plaintiff states that "she showed the photos to her boss, defendant Son, and told him that she had caught employees eating while they were on the clock."[5] (Doc. No. 6 at 2.) However, "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider*, 151 F.3d at 1197 n. 1. Accordingly, the court finds that the complaint fails to plausibly allege that the form of the McDonald's photos implicates a matter of public concern. Thus, notwithstanding the fact that the content and context of the photos plausibly relate to a matter of public concern, the court finds that the taking of the photos does not plausibly implicate a matter of public concern because the complaint does not allege that plaintiff showed them to anyone.

Having found that the complaint fails to plausibly allege that plaintiff's objection to her co-worker's driving or her taking of the McDonald's photos addressed a matter of public concern, the court will dismiss plaintiff's First Amendment claim with leave to amend.

**B.    The Complaint Does Not Plausibly Allege a California Whistleblower Protection Act Claim.**

Finally, plaintiff has brought a state law claim for violation of the CWPA. In enacting the CWPA, the California Legislature "f[ound] . . . that state employees should be free to report waste, fraud, abuse of authority, violation of law, or threat to public health without fear of retribution." Cal. Gov't Code § 8547.1. "[A]ny person who intentionally engages in acts of . . . retaliation . . . against a state employee . . . for having made a protected disclosure shall be liable in an action for damages brought against him or her by the injured party." *Id.* § 8547.8(c). A "protected disclosure" is defined as:

> [A] good faith communication . . . that discloses or demonstrates an intention to disclose information that may evidence (1) an improper governmental activity, or (2) a condition that may significantly threaten the health or safety of employees or the public if the

---

[5] Plaintiff also contends that photographs and video recordings of matters of public concern are protected by the First Amendment as "communicative activities." (Doc. No. 6 at 5–9.) The argument is unpersuasive. The issue is not whether plaintiff has a First Amendment right to photograph matters of public concern. Rather, the question before the court is whether plaintiff has adequately alleged that the photos she took relate to a matter of public concern.

12

> disclosure or intention to disclose was made for the purpose of remedying that condition.

Cal. Gov't Code § 8547.2(e). An "improper government activity" is defined as:

> [A]n activity by a state agency or by an employee that is undertaken in the performance of the employee's duties, undertaken inside a state office, or, if undertaken outside a state office by the employee, directly relates to state government, whether or not that activity is within the scope of his or her employment, and that (1) is in violation of any state or federal law or regulation, including, but not limited to, corruption, malfeasance, bribery, theft of government property, fraudulent claims, fraud, coercion, conversion, malicious prosecution, misuse of government property, or willful omission to perform duty, . . . or (3) is economically wasteful, involves gross misconduct, incompetency, or inefficiency.

*Id.* § 8547.2(c).

In determining whether the speech at issue is a protected disclosure under the CWPA, the decision in *Levi v. Regents of University of California*, 15 Cal. App. 5th 892 (2017), is instructive. There, the issue was whether Levi had "made a protected disclosure of improper governmental activity or a condition threatening the health and safety of the public to support her CWPA retaliation claim." *Id.* at 865. The purported whistleblowing activity included "complaints and grievances Levi filed or participated in alleg[ing] [a defendant] had a conflict of interest in [his wife's] residency application, made department decisions to favor [his wife], retaliated against Levi for being a whistleblower, and was generally a bully who intimidated people." *Id.* at 903–04. In distinguishing between complaints related to conflicts of interest versus internal personnel disclosures, the court stated:

> In our view, complaints that [a defendant] created a stressful work environment by yelling, undermining employees' confidence through statements that they were performing poorly, and saying hurtful things are not protected disclosures under the CWPA . . . because the complaints are "akin to internal personnel or administrative disclosures." Complaints made "in the context of internal administrative or personnel actions, rather than in the context of legal violations" do not constitute protected whistleblowing. "To exalt these exclusively internal personnel disclosures with whistleblower status would create all sorts of mischief. Most damagingly, it would thrust the judiciary into micromanaging employment practices and create a legion of undeserving protected 'whistleblowers' arising from the routine workings and communications of the job site."

*Id.* at 904 (internal citations omitted) (quoting *Conn v. W. Placer Unified Sch. Dist.*, 186 Cal. App. 4th 1163, 1182 (2010), *as modified on denial of reh'g* (Aug. 10, 2010), and *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1385 (2005)).

With this guidance in mind, the court addresses whether plaintiff has plausibly alleged that she made a protected disclosure.

1. <u>The Complaint Does Not Plausibly Allege that Plaintiff's Objection to Her Co-worker's Driving Constitutes a Protected Disclosure Under the CWPA.</u>

Plaintiff contends that her co-worker's driving constituted an improper governmental activity because such driving "could not only endanger employees in the future but also the public in the future should [the co-worker] continue to drive in this manner, especially in any state vehicles [and] . . . [s]uch driving could also cause waste of state vehicles should they be involved in a wreck." (Doc. No. 1-1 at 4.) Plaintiff further alleges that the co-worker's driving violated the California Vehicle Code, which prohibits a driver of a motor vehicle from following another vehicle more closely than is reasonable. Cal. Vehicle Code § 21703. These allegations do not state a plausible claim for relief under the CWPA.

First, the allegations of plaintiff's complaint in this regard are conclusory in nature. Plaintiff alleges that her co-worker's driving was unsafe but does not provide any factual allegations suggesting that the driving constituted an improper governmental activity or could threaten the safety of CDFA employees or the public. (*See* Doc. No. 1-1 at 4–6.) For example, plaintiff fails to allege that the co-worker was driving a CDFA vehicle at the time of the alleged incident, or that the co-worker was performing her job, or even that the co-worker was on the clock at the time. Additionally, while the complaint alleges that unsafe driving poses a risk to the safety of employees and the public, plaintiff does not allege in her complaint that her objection to her co-worker's driving was made in order to remedy a condition that might threaten the health or safety of CDFA employees or the public.

Second, plaintiff's objection to her co-worker's driving is "akin to internal personnel or administrative disclosures." *Levi*, 15 Cal. App. 5th at 904. Plaintiff does not allege that, in complaining about her co-worker's driving, she reported waste, fraud, abuse of authority, or a

threat to public health.  Plaintiff alleges she reported only that her co-worker violated the law by driving too closely behind her.  (Doc. No. 1-1 at 4–5.)  It is implausible that driving infractions completely unrelated to a state employee's job duties are the type of disclosures the Legislature intended to protect in enacting the CWPA.  Indeed, the violations of law and regulations listed under the definition of "improper governmental activity" relate to violations that, at their core, affect the public's trust with regard to a state employee or agency.  *See* Cal. Gov't Code § 8547.2(c) (listing "fraudulent claims, fraud, coercion, conversion, malicious prosecution, misuse of government property, [and] willful omission to perform duty" as the types of violations contemplated by the Legislature).  Plaintiff's objection to her boss about her co-worker's driving relates merely to "the routine workings and communications of the job site."  *Levi*, 15 Cal. App. 5th at 904 (citation and internal quotation marks omitted).

Accordingly, the court finds that plaintiff's complaint does not plausibly allege a violation of the CWPA based on her objection to her co-worker's driving habits.

2. <u>The Complaint Does Not Plausibly Allege that the Taking of the McDonald's Photos Constitutes a Protected Disclosure under the CWPA.</u>

Plaintiff alleges that the taking of the McDonald's photos is a protected disclosure because the photos depict "economically wasteful conduct as well as the theft of state funds" since CDFA employees were "being paid for work when work was not being performed."  (Doc. No. 1-1 at 5.)  As already discussed, plaintiff's allegations in this regard plausibly allege that CDFA employees were misusing or wasting public funds, and the court therefore finds that the allegations plausibly allege an improper governmental activity.  *See* Cal. Gov't Code § 8547.2(c).

Nonetheless, plaintiff's CWPA claim fails for the same reason the allegations failed to state a claim in the First Amendment context:  She does not allege that she showed these photos to defendant Son or to any other superior at CDFA, only that she "took the photographs . . . intend[ing] to show that the employees were sitting at a restaurant while they were on the clock." (*Id.* at 5.)  Plaintiff cannot claim that the photos she took are protected disclosures if she does not also allege that she disclosed those photos to others.  *See* Cal. Gov't Code § 8547.2(e) (defining a "protected disclosure" as a "*communication* . . . that *discloses* . . . an improper governmental

15

activity") (emphasis added).  Accordingly, plaintiff's complaint does not plausibly allege a violation of the CWPA based on her taking photos of vehicles in the McDonald's parking lot.

Having found that the complaint fails to plausibly allege that plaintiff's objection to her co-worker's driving or her taking of the McDonald's photos constituted a protected disclosure, the court will dismiss plaintiff's CWPA claim against defendants CDFA and Son with leave to amend.

**C.     Defendant's Motion to Strike Plaintiff's Request for Punitive Damages is Mooted by the Preceding Analysis.**

Defendants separately move to strike or dismiss plaintiff's request for punitive damages against defendant Son, arguing that plaintiff's conclusory allegations of malice are insufficient to support a claim for such damages.  (Doc. No. 5-1 at 21–22.)  Because the court concludes that plaintiff's complaint fails to allege a plausible claim against defendant Son, her claim for punitive damages against that defendant has been rendered moot.[6]

**CONCLUSION**

For the reasons explained above, the court concludes that plaintiff's complaint fails to allege sufficient facts upon which relief may be granted with respect to both of her claims. Defendant's motion to dismiss (Doc. No. 5) is therefore granted with leave to amend.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) ("leave [to amend] shall be freely given when justice so requires," and instructing that this rule "is to be applied with extreme liberality") (citation and internal quotation marks omitted).  Leave to amend is appropriate here given the early stage of the litigation and the fact that plaintiff's counsel represented at the hearing on the motion that there were additional facts that could be alleged to

/////

/////

/////

---

[6] A motion to strike would not appear to be the proper vehicle for seeking dismissal of such a claim, even where the damages sought would be foreclosed.  *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010) ("Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law.").

16

remedy the deficiencies addressed in this order.  Accordingly, any amended complaint plaintiff elects to file shall be filed within fourteen (14) days of the filing date of this order.

IT IS SO ORDERED.

Dated: **June 4, 2019**

UNITED STATES DISTRICT JUDGE