UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICKIE CROSS,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF FOOD AND AGRICULTURE, YOUNGSOO SON, and DOES 1–100,<br><br>Defendants. | No. 1:18-cv-01302-DAD-JLT<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT<br><br>(Doc. No. 19) |

This matter is before the court on a motion to dismiss plaintiff Nickie Cross' first amended complaint ("FAC") filed by defendants California Department of Food and Agriculture ("CDFA") and Youngsoo Son ("Son") (collectively, "defendants"). (Doc. No. 19.) Pursuant to Federal Rule of Civil Procedure 78(b) and Local Rule 230(g), the court deemed the motion suitable for decision without oral argument. (Doc. No. 24.) The court has considered the parties' briefs and for the reasons set forth below will grant defendants' motion to dismiss.

**BACKGROUND**

Plaintiff was employed by defendant CDFA as an agricultural technician and defendant Son served as her supervisor. (Doc. No. 18 at 1.) Defendant Son terminated plaintiff's employment on March 13, 2017. (*Id.* at 4.) Plaintiff claims that she was terminated for conduct that is protected under the First Amendment of the United States Constitution and the California

1

Whistleblower Protection Act (the "CWPA"), California Government Code § 8547 *et seq*. (*Id.* at 4–6.) Plaintiff asserts her First Amendment retaliation claim against defendant Son and her CWPA claim against both defendants CDFA and Son. (*Id.*) Plaintiff alleges she engaged in protected conduct on two occasions. (*Id.* at 2–4.)

First, on March 2, 2017, while plaintiff was driving on a public road to the CDFA worksite, a co-worker followed plaintiff too closely and drove in a manner that, according to plaintiff, endangered her, the co-worker, and the public in violation of California law. (*Id.* at 2.) Plaintiff thereafter objected to the co-worker and defendant Son about the co-worker's driving. (*Id.*) Plaintiff told her co-worker that "[she] often brakes for animals on the road and that by following Plaintiff too closely and illegally, [the co-worker] could hit Plaintiff from behind and cause damage to Plaintiff and Plaintiff's vehicle." (*Id.*) Shortly after this incident, plaintiff told defendant Son that the co-worker had been following plaintiff too closely on the public road leading to the CDFA worksite and never passed her despite opportunities to pass during a two-mile stretch of road. (*Id.* at 3.) Plaintiff also told defendant Son that: the co-worker had driven in this manner before; the co-worker drove state-issued vehicles; and the co-worker's driving habits could endanger other employees and state property. (*Id.* at 2–3.) Plaintiff alleges that her complaints regarding her co-worker's driving habits "were intended to rectify illegal driving by [the co-worker] that endangered third parties as well as public property." (*Id.* at 3.)

Second, in or around May 2016, plaintiff "noticed that fellow employees . . . had been sitting at a McDonald's while on work hours" and not on break. (*Id.* at 3.) Plaintiff thereafter took pictures with her phone "of vehicles utilized by those employees while the vehicles were parked at the McDonald's restaurant with the intent to present those photographs to . . . [defendant] Son to reveal that the employees were involved in improper conduct," namely that CDFA employees were, according to plaintiff, engaging in the waste of public funds. (*Id.*) Plaintiff alleges that on the same day that she took the pictures, she complained to defendant Son about what she witnessed and informed him that she took pictures "to prove this waste of public funds." (*Id.* at 3–4.) Although plaintiff attempted to show the pictures to defendant Son, he "refused to look at them" and instructed plaintiff to delete the pictures from her phone. (*Id.* at 4.)

In her FAC, plaintiff alleges that her objections to her co-worker's driving and her taking of the pictures of CDFA employees' vehicles at a restaurant while they were on work hours were "contributing reason[s]" in defendant Son's decision to terminate her.[1]  (*Id.* at 4.)

On July 2, 2019, defendants filed the pending motion to dismiss.  (Doc. No. 19.)  Unlike defendants' earlier motion to dismiss plaintiff's original complaint (Doc. No. 5), in the pending motion defendants move only to dismiss plaintiff's claims to the extent that they are based on plaintiff's objection to her co-worker's driving.  (Doc. No. 19-1.)  The pending motion also seeks to dismiss plaintiff's request for punitive damages against defendant Son.  (*Id.*)  On August 5, 2019, plaintiff filed her opposition to the pending motion, and on August 13, 2019, defendants filed their reply thereto.  (Doc. Nos. 22, 23.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  A dismissal may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In evaluating whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  However, the court will not assume the truth of legal conclusions cast in the form of factual allegations.  *United States ex rel. Chunie v. Ringrose*, 788

---

[1] Attached to the FAC is plaintiff's March 13, 2017 notice of termination, which states that plaintiff's objections with regard to her co-worker's driving as well as her taking of the pictures of CDFA employees' vehicles contributed to plaintiff being terminated with fault by CDFA.  (*See* Doc. No. 18, Ex. 1.)

3

F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 676. A complaint must do more than allege mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## ANALYSIS

**A.     The Court Will Construe Defendants' Motion to Strike as a Motion to Dismiss.**

Although docketed as a motion to dismiss, the pending motion is styled as a motion to dismiss *and* to strike. (*See* Doc. No. 19 at 1.) As noted above, defendants move to dismiss plaintiff's request for punitive damages against defendant Son, and they move to "strike out all allegations relating to Plaintiff's complaints about her co-worker's driving, as the allegations are immaterial and impertinent to Plaintiff claims for relief." (Doc. No. 19-1 at 5.) Defendants contend that because plaintiff's complaints about her co-worker's driving do not constitute protected speech under the First Amendment or a protected disclosure under the CWPA, those allegations should be stricken from the FAC. (*Id.*)[2]

Federal Rule of Civil Procedure 12(f) states that a court may strike from a complaint "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded[,] [and] '[i]mpertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citation omitted), *rev'd on other grounds by* 510 U.S. 517 (2004). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). However, motions to strike are generally disfavored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the

---

[2] The court is perplexed by defendants' decision to move to strike the FAC's allegations relating to plaintiff's complaints about her co-worker's driving habits, instead of moving to dismiss any claim based upon those allegations, as defendants did when moving to dismiss plaintiff's original complaint. (See Doc. No. 5.)

4

litigation." *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) (citation and quotation marks omitted).

Here, defendants contend that because plaintiff's speech concerning her co-worker's driving habits cannot form the basis of either a First Amendment retaliation claim or a CWPA claim, those allegations are immaterial, irrelevant, and impertinent to her claims. (Doc. No. 19-1 at 9–22.) Defendants are incorrect. Plaintiff's allegations regarding her co-worker's driving are not immaterial, irrelevant, or impertinent to her claims—in fact, they form one basis upon which she is asserting her claims. Whether or not plaintiff can state a claim on that basis is properly evaluated under Rule 12(b)(6) motion to dismiss standard. Indeed, as evidenced by the pending motion, defendants reach the flawed conclusion that these allegations are immaterial, irrelevant, and impertinent to plaintiff's claims only *after* arguing that the allegations fail to state a cognizable claim for relief under the First Amendment and the CWPA. (*See* Doc. No. 19-1 at 9–18.) In other words, defendants are applying the motion to dismiss standard and then asking the court to strike the allegations, instead of asking the court to dismiss those claims.

Accordingly, the court construes defendants' motion to strike plaintiff's allegations regarding her co-worker's driving habits as a motion to dismiss plaintiff's claims to the extent that they are based on those allegations. *Consumer Sols. REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1021 (N.D. Cal. 2009) ("[W]here a motion is in substance a Rule 12(b)(6) motion, but is incorrectly denominated as a Rule 12(f) motion, a court may convert the improperly designated Rule 12(f) motion into a Rule 12(b)(6) motion."). The court will now address whether the FAC plausibly alleges a First Amendment retaliation claim or a CWPA claim based on the allegations regarding her co-worker's driving habits.

**B.      The Allegations Regarding Plaintiff's Co-Worker's Driving Habits Do Not Plausibly Allege a First Amendment Retaliation Claim**

The Ninth Circuit has explained that:

> [i]n evaluating a First Amendment retaliation claim, [courts] address a sequential five-step series of questions. First, the plaintiff bears the burden of showing: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; [and] (3) whether the plaintiff's

5

> protected speech was a substantial or motivating factor in the adverse employment action. Next, if the plaintiff has satisfied the first three steps, the burden shifts to the government to show: (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009) (citations and internal quotation marks omitted); *see also Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013).

Here, defendant Son contends that the court's inquiry should end at the first step because plaintiff does not plausibly allege that she spoke on a matter of public concern when relaying her concerns about her co-worker's driving to defendant Son. (Doc. No. 19-1 at 10); *see also Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (The court must "determin[e] whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action"). "The [] emphasis . . . on the right of a public employee as a citizen in commenting upon matters of public concern [i]s not accidental" because "government offices could not function if every employment decision became a constitutional matter." *Connick v. Myers*, 461 U.S. 138, 143 (1983). Thus, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at 147.

To assess whether the speech at issue addressed a matter of public concern, this court must examine the content, form, and context of plaintiff's objection to her co-worker's driving habits. *See Connick*, 461 U.S. at 148. This inquiry is purely a question of law. *Robinson*, 566 F.3d 822. The content of the speech at issue is the "greatest single factor" in the inquiry. *Demers v. Austin*, 746 F.3d 402, 415 (9th Cir. 2014); *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Cir. 2009). Speech that "enable[s] [] members of society to make informed decisions about the operation of their government" relates to a matter of public concern. *Id.* at 710 (citation and internal quotation marks omitted). On the other hand, "speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of

the performance of governmental agencies is generally not of public concern." *Id.* (citation and internal quotation marks omitted). "[S]peech contain[ing] passing references to public safety incidental to the message conveyed, weighs against a finding of public concern." *Id.* at 711 (citation and internal quotation marks omitted).

Courts must also consider the form of the speech at issue. That an employee expressed her views inside the office or privately, rather than publicly, "is not dispositive," but "[a] limited audience weighs against [a] claim of protected speech." *Desrochers*, 572 F.3d at 714 (citation and internal quotation marks omitted); *see also Demers*, 746 F.3d at 416 (holding that, while not dispositive, "[i]f an employee expresses a grievance to a limited audience, such circulation can suggest a lack of public concern"). Thus, "[p]rivate speech motivated by an office grievance is less likely to convey the information that is a prerequisite for an informed electorate." *Desrochers*, 572 F.3d at 714 (citation and internal quotation marks omitted).

Lastly, courts "examine the context of the speech, particularly the *point* of the speech." *Id.* at 715 (citation and internal quotation marks omitted). "An employee's motivation [is] relevant to the public-concern inquiry." *Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting *Desrochers*, 572 F.3d at 715). "The question of whether the speech was made to further some purely private interest is relevant to that inquiry." *Desrochers*, 572 F.3d at 715 (citation and internal quotation marks omitted).

Because the content, form, and context of plaintiff's alleged objection to the driving habits of her co-worker all indicate that her grievance did not address a matter of public concern, the court concludes that the FAC does not plausibly allege a cognizable claim based upon plaintiff's airing of that grievance.

As to content, the FAC alleges that plaintiff "informed defendant Son that [the co-worker] had been following Plaintiff too closely on the road leading to the CDFA work site on 3/2/17 and never passed Plaintiff even though [the co-worker] could have[.]" (Doc. No. 18 at 3.) Plaintiff told "[defendant] Son that [the co-worker] had engaged in this specific statutory violation (driving too closely) before . . ., endangering others, including fellow employees." (*Id.*) Plaintiff also told defendant Son that the co-worker drove state-issued vehicles and that the co-worker's "driving

could endanger others as well as state property." (*Id.*)

As the court noted in its prior order dismissing plaintiff's original complaint (*see* Doc. No. 14 at 6–8), these stated grievances do not pass muster under the law governing First Amendment retaliation claims. As alleged, "the subject matter of [plaintiff's] statement is only marginally related to issues of public concern," *Johnson v. Multnomah County*, 48 F.3d 420, 425 (9th Cir. 1995), and plaintiff's statement would not be relevant in any way to the public's evaluation of the CDFA's performance, *Desrochers*, 572 F.3d at 711. Even if the court credits plaintiff's allegation that her co-worker is a terrible driver, there is simply no connection between that allegation and the public's evaluation of an agency responsible for food and agriculture. That plaintiff's complaint about her co-worker's driving was a personal grievance is not only demonstrated by the allegations in the FAC but also by plaintiff's notice of termination, which she has attached to her FAC. That notice states that "[o]n or about March 2, 2017, [plaintiff] confronted [her co-worker] and said, 'you need to cut that shit out,' . . . [Plaintiff] angrily stated that [her co-worker] was too close and that [the co-worker's] vehicle's headlights were impairing [plaintiff's] vision." (Doc. No. 18 at 8.) The notice goes on to state that plaintiff threatened to make contact with her co-worker's vehicle if the co-worker continued to drive in the same manner. (*Id.*) In other words, plaintiff complained to defendant Son about the manner in which her co-worker was driving behind her because it allegedly affected *plaintiff*, not because it affected the public.

Plaintiff's attempts to overcome this shortcoming by arguing that continued problematic driving by her co-worker could result in some future harm or damage to CDFA employees, CDFA vehicles, the public, or to "animals on the road" or by arguing that the co-worker's driving violates a specific state law (Doc. No. 18 at 2–3) are unavailing. As plaintiff was informed previously, a personal grievance does not transform into a matter of public concern simply because one makes a "passing reference to public safety incidental to the message conveyed," as plaintiff has done so here. *Desrochers*, 572 F.3d at 711. The court therefore concludes that plaintiff has failed to plausibly allege that the content of her objection to her co-worker's driving addressed a matter of public concern.

8

As to form, plaintiff alleges that she verbally objected to defendant Son and her co-worker about her co-worker's driving habits on the same day that her co-worker allegedly drove too closely behind her. (*See* Doc. No. 18 at 3.) Plaintiff does not allege any other facts that would assist the court in ascertaining the form of her statement to defendant Son and the co-worker. "The fact that the speech took the form of an internal employee grievance means that the public was never made aware of [plaintiff's] concerns . . . [and] this [factor therefore] cuts against a finding of public concern." *Desrochers*, 572 F.3d at 715; *see also Demers*, 746 F.3d at 416. In her opposition to the pending motion, plaintiff argues that the internal nature of her grievance is not dispositive, and that the content of plaintiff's speech is the most "significant" factor with respect to the public concern analysis. (Doc. No. 22 at 6–7.) As acknowledged in the court's prior order dismissing her original complaint, plaintiff is correct in this regard. Here, however, the court has already found that the content of plaintiff's objection to her co-worker's alleged driving habits weighs against a finding that her speech related to a matter of public concern.

Finally, as to context, plaintiff alleges that her complaints about her co-worker's driving "were intended to rectify illegal driving . . . that endangered third parties as well as public property." (Doc. No. 18 at 3.) As discussed above, "[a]n employee's motivation [is] relevant to the public-concern inquiry." *Turner*, 788 F.3d at 1210. But, the court need not rely solely on plaintiff's motivation to determine the context of her speech since she has attached her notice of termination to her FAC, thereby incorporating it. That notice states that on the same date as plaintiff complained to defendant Son about her co-worker's driving—the purported protected conduct—she also "aggressive[ly] and hostile[ly] . . . confronted [the co-worker]" telling the co-worker to "cut that shit out" and informing the co-worker that the co-worker's driving habits were impairing plaintiff's vision. (Doc. No. 18 at 8–9.) The relevant question is "why did the employee speak (as best we can tell)? Does the speech seek to bring to light actual or potential wrongdoing or breach of public trust, or is it animated instead by dissatisfaction with one's employment situation?" *Desrochers*, 572 F.3d at 715. Here, it is apparent that the FAC does not plausibly allege that plaintiff's speech—her dissatisfaction with a co-worker, a "purely private interest," *id.*—sought to bring to light actual or potential wrongdoing or breach of public trust.

9

Consideration of all three of the relevant factors compels the conclusion that plaintiff's objection to her co-worker's driving did not relate to a matter of public concern. The FAC therefore does not plausibly allege a First Amendment retaliation claim based on plaintiff's objection to her co-worker's driving. Accordingly, the court will dismiss plaintiff's First Amendment retaliation claim without leave to amend to the extent that it is based on plaintiff voicing her objection to her co-worker's driving.[3]

## C. The Allegations Regarding Plaintiff's Co-Worker's Driving Habits Do Not Plausibly Allege a California Whistleblower Protection Act Claim

As noted, plaintiff's FAC also asserts a state law claim for violation of the CWPA. In enacting the CWPA, the California Legislature found "that state employees should be free to report waste, fraud, abuse of authority, violation of law, or threat to public health without fear of retribution." Cal. Gov't Code § 8547.1. "[A]ny person who intentionally engages in acts of . . . retaliation . . . against a state employee . . . for having made a protected disclosure shall be liable in an action for damages brought against him or her by the injured party." *Id.* § 8547.8(c). A "protected disclosure" is defined as:

> [A] good faith communication . . . that discloses or demonstrates an intention to disclose information that may evidence (1) an improper governmental activity, or (2) a condition that may significantly threaten the health or safety of employees or the public if the disclosure or intention to disclose was made for the purpose of remedying that condition.

Cal. Gov't Code § 8547.2(e). An "improper government activity" is defined as:

> [A]n activity by a state agency or by an employee that is undertaken in the performance of the employee's duties, undertaken inside a state office, or, if undertaken outside a state office by the employee, directly relates to state government, whether or not that activity is within the scope of his or her employment, and that (1) is in violation of any state or federal law or regulation, including, but not limited to, corruption, malfeasance, bribery, theft of government

---

[3] The court previously dismissed plaintiff's First Amendment retaliation claim with leave to amend, after having found that the original complaint did not state a cognizable claim based on plaintiff's objection to her co-worker's driving. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008) (holding that leave to amend would be futile where plaintiff was granted leave to amend once before and the amended complaint contained the same deficiencies as the prior complaint).

10

property, fraudulent claims, fraud, coercion, conversion, malicious prosecution, misuse of government property, or willful omission to perform duty, . . . or (3) is economically wasteful, involves gross misconduct, incompetency, or inefficiency.

*Id.* § 8547.2(c).

In determining whether the speech at issue is a protected disclosure under the CWPA, the decision in *Levi v. Regents of University of California*, 15 Cal. App. 5th 892 (2017), is instructive. There, the issue was whether Levi had "made a protected disclosure of improper governmental activity or a condition threatening the health and safety of the public to support her CWPA retaliation claim." *Id.* at 865. The purported whistleblowing activity included "complaints and grievances Levi filed or participated in alleg[ing] [a defendant] had a conflict of interest in [his wife's] residency application, made department decisions to favor [his wife], retaliated against Levi for being a whistleblower, and was generally a bully who intimidated people." *Id.* at 903–04. In distinguishing between complaints related to conflicts of interest versus internal personnel disclosures, the court stated:

> In our view, complaints that [a defendant] created a stressful work environment by yelling, undermining employees' confidence through statements that they were performing poorly, and saying hurtful things are not protected disclosures under the CWPA . . . because the complaints are "akin to internal personnel or administrative disclosures." Complaints made "in the context of internal administrative or personnel actions, rather than in the context of legal violations" do not constitute protected whistleblowing. "To exalt these exclusively internal personnel disclosures with whistleblower status would create all sorts of mischief. Most damagingly, it would thrust the judiciary into micromanaging employment practices and create a legion of undeserving protected 'whistleblowers' arising from the routine workings and communications of the job site."

*Id.* at 904 (internal citations omitted) (quoting *Conn v. W. Placer Unified Sch. Dist.*, 186 Cal. App. 4th 1163, 1182 (2010), *as modified on denial of reh'g* (Aug. 10, 2010), and *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1385 (2005)).

Plaintiff contends that her co-worker's driving constituted an improper governmental activity because it "may have significantly threatened the health or safety of employees or the public, to wit, a violation of the California Vehicle Code section 21703," which prohibits a driver

11

of a motor vehicle from following another vehicle more closely than is reasonable.  (Doc. No. 18 at 4.)  These allegations do not state a plausible claim for relief under the CWPA.

Although plaintiff alleges that her co-worker's driving may have significantly affected the health or safety of CDFA employees or the public, the FAC does not allege that her objection was in fact made to remedy the condition that might threaten the health or safety of CDFA employees or the public.  This is because plaintiff's objection to her co-worker's driving is "akin to internal personnel or administrative disclosures."  *Levi*, 15 Cal. App. 5th at 904.  Plaintiff does not allege that, when she complained about her co-worker's driving, she was reporting waste, fraud, abuse of authority, or a threat to public health.  Plaintiff alleges she reported only that her co-worker violated the law by driving too closely behind her.  (Doc. No. 18 at 3.)  It is implausible that driving infractions completely unrelated to a state employee's job duties are the type of disclosures the Legislature intended to protect in enacting the CWPA.  Indeed, the violations of law and regulations listed under the definition of "improper governmental activity" relate to violations that at their core affect the public's trust with regard to a state employee or agency.  *See* Cal. Gov't Code § 8547.2(c) (listing "fraudulent claims, fraud, coercion, conversion, malicious prosecution, misuse of government property, [and] willful omission to perform duty" as the types of violations contemplated by the Legislature).  Plaintiff's objection to her boss about her co-worker's driving relates, at most, merely to "the routine workings and communications of the job site."  *Levi*, 15 Cal. App. 5th at 904 (citation and internal quotation marks omitted).

Accordingly, the court concludes that plaintiff's FAC does not plausibly allege a violation of the CWPA based on plaintiff's objection to her co-worker's driving habits.  Having so found and having previously afforded plaintiff an opportunity to cure these deficiencies, the plaintiff's CWPA claim will be dismissed without leave to amend to the extent that it is based on plaintiff's objection to her co-worker's driving.  *See supra* n.2.

**D.     The FAC Does Not Plausibly Allege a Claim for Punitive Damages**

Finally, defendants move to dismiss plaintiff's request for punitive damages against defendant Son, arguing that plaintiff's allegations of malice against him are conclusory and fail to state a claim upon which relief can be granted.  (Doc. No. 19-1 at 22–23.)  The FAC alleges that

defendant Son "is liable for punitive damages due to the fact [that his] conduct . . . was malicious . . . and/or at a minimum was in reckless disregard for Plaintiff's protected federal rights." (Doc. No. 18 at 5–6.)

These allegations do not plausibly allege a claim for punitive damages as they are entirely conclusory. "Something more is necessary to plausibly support an evil motive behind [defendant Son's] actions." *Coppola v. Smith*, 982 F. Supp. 2d 1133, 1145 (E.D. Cal. 2013). Because the court did not reach plaintiff's claim for punitive damages in granting defendants' previous motion to dismiss, the court will dismiss plaintiff's request for punitive damages with leave to amend.

**CONCLUSION**

For the reasons set forth above,

1. Defendants' motion to dismiss (Doc. No. 19) is granted;
2. Plaintiff's claims now proceed only on the basis of her allegations that she was terminated for having taken pictures of the vehicles of other employees at a restaurant parking lot during work hours;
3. Plaintiff is granted leave to amend her claim for punitive damages only; and
4. Any amended complaint shall be filed within fourteen (14) days from the issuance of this order.

IT IS SO ORDERED.

Dated: **February 15, 2020**

UNITED STATES DISTRICT JUDGE